FILED
JUN 2 0 2018
U.S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

IN THE MATTER OF AN APPLICATION )
OF THE UNITED STATES OF AMERICA )
FOR A WARRANT TO OBTAIN )
RECORDS, LOCATION INFORMATION, )
INCLUDING PRECISION LOCATION ) No. 4:18 MJ 211 (DDN)
INFORMATION, CELL SITE )
INFORMATION, AND OTHER ) **FILED UNDER SEAL**
SIGNALING INFORMATION )
ASSOCIATED WITH THE CELLULAR )
TELEPHONE HAVING THE NUMBERS )
(314) 662-7891. )

## AFFIDAVIT

I, Timothy Livingstone, being duly sworn, depose and state that I am a Task Force Officer with the Drug Enforcement Administration (DEA) duly appointed according to law and acting as such.

### Introduction

I am an investigative or law enforcement officer of the United States, within the meaning of Title 18, United States Code, Section 2510(7), and am empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516.

I have been working as a TFO for DEA since July 2017. I am currently assigned to the St. Louis Division Office, Task Force Group 32. I have been a police officer for eight (8) years. Prior to being appointed as a TFO for DEA, I was a TFO with the Alcohol, Tobacco, Firearms and Explosives (ATF) since September 2015. Prior to being appointed to ATF, I was a detective with the St. Ann Police Department since February 2013. During the course of my experience, I have

had multiple hours of training related to narcotics investigations through the St. Louis County and Municipal Police Academy, Midwest Counterdrug Training Center. This training includes basic narcotics investigations, drug awareness and identification, clandestine laboratory familiarization, money laundering, and drug interdiction. In addition, I have had numerous conversations with officers, witnesses, and informants, about the methods used in illegal narcotics trafficking and narcotics sales.

Since being assigned as a TFO for DEA, I have been involved in numerous investigations involving drug-trafficking organizations (DTO). Based on my training, experience, and participation in controlled substance investigations, your affiant is familiar with the methods of operation of drug traffickers. During my tenure in law enforcement, I have participated in numerous drug investigations, which have resulted in the seizure of cocaine, methamphetamine, heroin, MDMA or ecstasy, marijuana, U.S. Currency, and other controlled substances. I am familiar with and have used normal methods of investigation, including, but not limited to, visual surveillance, questioning of witnesses, the use of search and arrest warrants, the use of informants, the utilization of undercover agents and the use of court-authorized wire intercepts. I am also familiar with federal criminal laws, particularly those laws relating to narcotics. I am part of an experienced team of narcotics investigators that have participated in numerous drug trafficking investigations utilizing various investigative techniques

The facts alleged in this affidavit come from my own investigation, my training and experience, and information obtained from other investigators and witnesses. As this affidavit is submitted for the limited purpose of establishing probable cause to locate and monitor the location of a cellular telephone as part of a criminal investigation, it does not set forth all of my

2

knowledge regarding this matter.

Upon information and belief, and as explained in greater detail below, the AT&T cellular telephone bearing number **(314) 662-7891** (hereinafter referred to as the **"subject cellular telephone"**), which is being utilized by **Richard SWORE,** has been used and is presently being used, in connection with the commission of offenses involving ongoing violations of Title 21, United States Code, Sections 841(a)(1) and 846 (hereinafter referred to as the **"subject offenses"**) by **Richard SWORE** and others known and unknown.

The present affidavit is being submitted in connection with an application of the Government for a warrant and order authorizing agents/officers of the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, to obtain location information, including precision location information, cell site location information, and other signaling information, including pen register information, in an effort to locate and monitor the locations of the **subject cellular telephone**.

Your affiant further states that there is probable cause to believe that the location information associated with the **subject cellular telephone** will lead to evidence of the **subject offenses** as well as to the identification of individuals who are engaged in the commission of those criminal offense and related crimes.

### Investigation and Probable Cause

This application pertains to the **target subject's** use of the **subject cellular telephone** number. Because this is offered for the limited purpose of supporting this particular application, it does not contain every fact known to investigators.

3

The source of my information and the grounds for this belief are as follows and are based on my personal knowledge as well as information provided to me by other agents assigned to the investigation:

On Thursday, April 31, 2018, TFO Tim Livingstone, GS Robert Eisenbarger, SA Matt McKnight, SA Bryson Wheeler, and Captain Jeff Seerey interviewed St. Ann CS-17-001[2], (herein referred to as CS-1) at the St. Ann Police Department in reference to the drug distribution of Richard **SWORE**. **SWORE** is currently distributing large amounts of crystal methamphetamine throughout the St. Louis Metropolitan area as well as St. Louis County and St. Charles County.

CS-1 stated that **SWORE** is charging $3000.00 for a half-pound and $6000.00 for a full pound of crystal methamphetamine. He/she added that **SWORE** sells nothing less than a half-pound at a time in order to move his product quicker, which **SWORE** believes helps him avoid police contact. CS-1 additionally added that he/she had seen **SWORE** within the last three (3) to four (4) days and **SWORE** was currently in possession of a large amount of crystal methamphetamine as well as U.S. Currency.

CS-1 stated that **SWORE** is also in possession of a firearm, which he/she believed to be a .40 caliber handgun. He/she added that **SWORE** is always in possession of the aforementioned firearm and **SWORE** has stated that he carries a pistol-gripped AK. CS-1 added that **SWORE** is usually under the influence of crystal methamphetamine and is very paranoid of people and especially law enforcement.

---

[2] The CS-17-001 has been working as a CS for the St. Ann Police Department for approximately two (2) years. He/she has been proven reliable and has been used in multiple Federal investigations, including but not limited to controlled narcotic buys and introducing undercover Federal Agents to targets.

4

CS-1 said that **SWORE** is currently driving an orange Dodge Charger SRT8, bearing Missouri temporary tag 03L314. A computer inquiry into the vehicle revealed that **SWORE** and the aforementioned vehicle are currently "wanted" out of St. Louis City for felony fleeing. The information associated with the "wanted" states that at the time **SWORE** fled from the St. Louis City Officers, he (**SWORE**) was armed with a handgun.

CS-1 provided the phone number **314-662-7891**, the **"subject cellular telephone,"** for **SWORE**. CS-1 additionally added that **SWORE** utilizes Facebook messenger[3] to conduct most of his narcotic transactions but CS-1 has had contact with **SWORE** on the **"subject cellular telephone."** On June 14, 2018, in the presence of investigators, CS-1 contacted **SWORE** utilizing the phone call feature on the Facebook Messenger app. During the conversation, **SWORE** stated to CS-1 that he was on "E," which investigators believe means "empty" or empty on dope and **SWORE** would contact CS-1 after he (**SWORE**) re-upped from his source.

On June 12, 2018, the Jefferson County Narcotics Unit received information from a CS[4] (herein referred to as CS-2), that a white female, identified as Samantha **GAITHER**, was distributing large amounts of crystal methamphetamine throughout Jefferson County, MO. CS-

---

3 Investigators are aware that Facebook, "is a social networking website and service where users can post comments, share photographs and links to news or other interesting content to the Web, play games, chat live, and stream live video. Shared content can be made publicly accessible, or it can be shared only among a select group of friend or family or a single person." (Definition from Lifewire, February 2, 2018). Facebook also allows for direct messaging, also known as instant messaging, on Facebook's Messenger feature. In addition, Facebook Messenger allows users to make phone calls within the app. Facebook Messenger is sometimes used by narcotic traffickers to elude law enforcement because only people who are Facebook friends and linked on Messenger are able to see those private conversations.

4 CS-2 is a documented DEA informant who has provided valuable information on multiple investigations and has proven to be reliable. CS-2 is a Good Samaritan CS and is not working off charges or providing information for financial compensation.

5

2 further stated that **GAITHER** was being sourced by Richard **SWORE**. He/she additionally added that **GAITHER** was picking up two (2) pounds of crystal methamphetamine from **SWORE** on June 12, 2018. After obtaining the aforementioned information, investigators established surveillance on **GAITHER**. The investigators received further information from CS-2 that **GAITHER** had already met **SWORE** and was currently in possession of a large amount of crystal methamphetamine, which she had hidden inside of her vehicle. Investigators conducted a traffic stop on **GAITHER's** vehicle which resulted in the seizure of approximately six (6) ounces of crystal methamphetamine. **GAITHER** was arrested and booked into the Jefferson County Jail.

On June 14, 2018, SA Bryson Wheeler and TFO Tim Livingstone attempted to interview **GAITHER** at the Jefferson County Jail. **GAITHER** immediately requested her attorney and the interview was terminated.

On June 18, 2018, Detective Jacob Green of the Jefferson County Narcotics Unit was reviewing **GAITHER**'s recorded jail calls. On June 17, 2018, **GAITHER** called the **subject cellular telephone.** Outlined below is a transcript of the pertinent part of the call:

**SWORE:** What did they allegedly get you with?

**GAITHER:** Allegedly, like, they want to say some bullshitting like 121 grams.

**SWORE:** 121 grams, Oh that's what they said it was?

**GAITHER:** Yeah something like that.

**SWORE:** What else? They get you with some money, they didn't get you with nothing else?

**GAITHER:** Say what?

**SWORE:** They didn't get you with no toy or nothing?

6

| | |
|---|---|
| **GAITHER:** | No. |
| **SWORE:** | That's good, so why you aint got no bond? |
| **GAITHER:** | Because, fucking, I was already out on a couple bonds, dude, they are going to try and get me on every motherfucking case I got, they don't want to let me go. |
| **SWORE:** | They won't reinstate your bond? |
| **GAITHER:** | I don't know, will you figure it out for me please? I know I sound all thrilled but really I feel like I'm fucking dying here, can you get me the fuck out of here? |
| **SWORE:** | Did you get questioned by them people? |
| **GAITHER:** | Yup. |
| **SWORE:** | Who they ask about? |
| **GAITHER:** | Not your way, they didn't even have a chance to ask me about any certain direction, like because I told them, like look, I need my fucking lawyer and they said like look, you know that you can be out of here, like now, all you got to do is talk to us, work with us or whatever and I said like me and god are going to have to figure out that shit another way because my way and your way are two different fucking ways. |

Investigators believe that when **SWORE** was asking **GAITHER** if they caught her with a toy, he was referring to a firearm. It is also believed that when **SWORE** asks **GAITHER** if "Them people" came to talk to her, **SWORE** was referring to the Federal Government. "Them People" is slang word used on the street which means the Federal Government. **SWORE** then asks

7

GAITHER who "Them people" asked her about, she responds by saying "not your way," referring that the investigators did not ask about SWORE or mention his name during the interview. The phone call continues for another couple minutes, and GAITHER begs SWORE to help her get out of jail. GAITHER even calls him Richard on a couple occasions during the recorded jail call.

The investigation and above information illustrates that SWORE is using the **subject cellular telephone** to coordinate his drug trafficking activities, obtaining what is believed to be crystal methamphetamine from an unidentified source. Investigators believe precision location information from the **subject cellular telephone** will facilitate law enforcement surveillance of SWORE, and assist in identify locations utilized by SWORE in the Eastern District of Missouri, and elsewhere, and identify his criminal associates. It is critical that the investigative team be able to locate and monitor the movements of the **subject cellular telephone** thereby assisting in the identification of the co-conspirators and the seizure of narcotics. Your affiant believes that the requested authorization would be a valuable asset in achieving the overall goals of the investigation.

The investigation has clearly demonstrated that the **subject cellular telephone** is being used in connection with the commission of offenses involving ongoing violations of Title 21, United States Code, Section(s) 841(a)(1) and 846 (the subject offenses). It is critical that the investigative team be able to locate and monitor the movements of the **subject cellular telephone** thereby assisting in the identification of the co-conspirators and the seizure of narcotics. Your affiant believes that the requested authorization would be a valuable asset in achieving the overall goals of the investigation.

## Investigative Considerations and Techniques

Based on my knowledge, training, and experience, as well as information provided by investigators with specialized experience relating to cellular telephone technology, I am aware of the following facts and considerations:

A.      Wireless phone providers typically generate and retain certain transactional information about the use of each telephone call, voicemail, and text message on their system. Such information can include log files and messaging logs showing all activity on a particular account, such as local and long distance telephone connection records, records of session times and durations, lists of all incoming and outgoing telephone numbers or other addressing information associated with particular telephone calls, voicemail messages, and text or multimedia messages.

B.      Wireless phone providers also typically generate and retain information about the location in which a particular communication was transmitted or received.   For example, when a cellular device is used to make or receive a call, text message or other communication, the wireless phone provider will typically generate and maintain a record of which cell tower(s) was/were used to process that contact.   Wireless providers maintain information, including the corresponding cell towers (i.e., tower covering specific geographic areas), sectors (i.e., faces of the towers), and other signaling data as part of their regularly conducted business activities.   Typically, wireless providers maintain records of the cell tower information associated with the beginning and end of a call.

9

C.   Because cellular devices generally attempt to communicate with the closest cell tower available, cell site location information from a wireless phone provider allows investigators to identify an approximate geographic location from which a communication with a particular cellular device originated or was received.

D.   Wireless providers may also retain text messaging logs that include specific information about text and multimedia messages sent or received from the account, such as the dates and times of the messages. A provider may also retain information about which cellular handset or device was associated with the account when the messages were sent or received. The provider could have this information because each cellular device has one or more unique identifiers embedded inside it. Depending upon the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Station Equipment Identity ("IMEI"). When a cellular device connects to a cellular antenna or tower, it reveals its embedded unique identifiers to the cellular antenna or tower in order to obtain service, and the cellular antenna or tower records those identifiers.

E.   Wireless providers also maintain business records and subscriber information for particular accounts. This information could include the subscriber's full name and address, the address to which any equipment was shipped, the date on which the account was opened, the length of service, the types of service utilized, the ESN or other unique identifier for the cellular device associated with the account, the subscriber's Social Security Number and date of birth, all

10

telephone numbers and other identifiers associated with the account, and a description of the services available to the account subscriber. In addition, wireless providers typically generate and retain billing records for each account, which may show all billable calls (including outgoing digits dialed). The providers may also have payment information for the account, including the dates and times of payments and the means and source of payment (including any credit card or bank account number).

   F. Providers of cellular telephone service also typically have technical capabilities that allow them to collect and generate more precise location information than that provided by cell site location records. This information is sometimes referred to as E-911 phase II data, GPS data or latitude-longitude data. In the Eastern District of Missouri, such information is often referred to as "precision location information" or "PLI" data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by attempting to triangulate the device's signal using data from several of the provider's cell towers. Depending on the capabilities of the particular phone and provider, E-911 data can sometimes provide precise information related to the location of a cellular device.

  In order to locate the **subject cellular telephone** and monitor the movements of the phone, the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, may need to employ one or more techniques described in this affidavit and in the application of the government. The investigative agency(ies), and other authorized federal/state/local law enforcement agencies, may seek a warrant to compel the Service Provider, any telecommunication service providers reflected in Attachment 1, to include providers of any type of wire and/or electronic communications (herein incorporated by reference), and any other applicable service

11

providers, to provide precision location information, including Global Position System information (if available), transactional records, including cell site location information, and pen register and trap-and-trace data.

None of the investigative techniques that may be employed as a result of the present application and affidavit require a physical intrusion into a private space or a physical trespass. Electronic surveillance techniques such as pen register and cell site location monitoring typically have not been limited to daytime use only. Furthermore, the criminal conduct being investigated is not limited to the daytime. Therefore, the fact that the present application requests a warrant based on probable cause should not limit the use of the requested investigative techniques to daytime use only. Accordingly, the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, request the ability to employ these investigative techniques at any time, day or night.

The monitoring of the location of the **subject cellular telephone** by one of the methods described herein will begin within ten (10) days of the date of issuance of the requested Warrant and Order.

## Conclusion

Based on the above information, there is probable cause to believe that the **subject cellular telephone** continue to be used to promote and facilitate a conspiracy to distribute controlled substances and the requested authorization would provide relevant evidence of the conspiracy.

There is likewise probable cause to conclude that locating and monitoring the movements of the **subject cellular telephone** will lead to the relevant evidence concerning violations of Title 21, United States Code, Section(s) 841(a)(1) and 846.

_____6/20/18_____                    _____
DATE                                     TIMOTHY LIVINGSTONE
                                         Task Force Officer
                                         Drug Enforcement Administration

Sworn to and subscribed before me this **20th** day of June, 2018.

_____
DAVID D. NOCE
UNITED STATES MAGISTRATE JUDGE
Eastern District of Missouri

13

## LIST OF TELECOMMUNICATION SERVICE PROVIDERS

## SPRINT
## and

| | | | |
|---|---|---|---|
| 01 Communications | Empire Paging | MCI Worldcom | Smart Beep Paging |
| Access Line Communication | Ernest Communications | Metro PCS | Smart City Telecom |
| ACN Communications | Echelon Telecommunications | Metro Teleconnect | Socket Telecom |
| ACS | EZ Talk Communications | Mid-Atlantic | South Central Bell |
| Aero Communications, Inc. (IL) | FDN Communications | Midvale Telephone Exchange | Sprint |
| Afford A Phone | Fibernit Comm | Midwest Wireless | Sprint Spectrum, L.P. |
| Airvoice Wireless | Florida Cell Service | Millington Telephone | SRT Wireless |
| Alaska Communications | Florida Digital Network | MLM Telecommunications | Star Telephone Company |
| Alhambra-Grantfx Telephone | Focal Communications | Mobile Communications | Start Wireless |
| AmeriTel | Frontier Communications | Mound Bayou Telephone Co. | Sugar Land Telephone |
| AOL Corp. | Gabriel Comm | Mountain Bell | Sure West Telephone Company |
| Arch Communication | Galaxy Paging | Mpower Communictions | Talk America |
| AT&T | Global Communications | Navigator | Tele Touch Comm |
| AT&T Mobility | Global Crossing | Telecommunications | Telecorp Comm |
| Bell Aliant | Global Eyes Communications | NE Nebraska Telephone | Telepak |
| Big River Telephone | Global Naps | Netlink Comm | Telistire |
| Birch Telecom | Global Rock Network | Network Services | Telnet Worldwide |
| Blackberry Corporation | Grafton Telephone Company | Neustar | Tex-Link Comm |
| Brivia Communications | Grand River | Neutral Tandem | Time Warner Cable |
| Broadview Networks | Grande Comm | Nex-Tech/United Wireless | T-Mobile |
| Broadvox Ltd. | Great Plains Telephone | Nexus Communications | Total Call International |
| Budget Prepay | Harrington Telephone | NII Comm | Tracfone Wireless |
| Bulls Eye Telecom | Harrisonville Telephone Co. | North Central Telephone | Trinity International |
| Cable Vision | Heartland Communications | North State Comm | Triton PCS Company |
| Call Wave | Hickory Telephone | Northcoast Communications | U-Mobile |
| Cbeyond Inc. | Houston Cellular Telephone | Novacom | Unicel Cellular |
| CCPR Services | Huxley Communications | Ntera | United On-Line |
| Cellco Partnership, d/b/a Verizon Wireless | iBasis | N-Teleos Wireless | United States Cellular Corp. |
| | IDT Corporation | NTS Communications | United Telephone of MO |
| Cellular One | Illinois Consolidated Communications | Oklahoma City SMSA | US Cellular |
| Cellular South | | ONSTAR | US Communications |
| Centennial Wireless | Illinois Valley Cellular | Optel Texas Telecom | US LEC |
| CenturyLink | Insight Phone | Orion Electronics | US Link |
| Champaign Cellular | Integra | PacBell | US West Communcations |
| Charter Communications | Iowa Wireless | PacWest Telecom | USA Mobility |
| Chickasaw Telephone | IQ Telecom | PAETEC Communications | VarTec Telecommunications |
| Choctaw Telephone Company | J2 Global Communications | Page Plus Communications | Verisign |
| Choice Net Comm. | Leap Wireless International | Page Mart, Inc. | Verizon Telephone Company |
| Cimco Comm | Level 3 Communications | Page Net Paging | Verizon Wireless |
| Cincinnati Bell | Level One | Panhandle Telephone | Viaero Wireless |
| Cinergy Communications | Local Links Communications | Peerless Network | Virgin Mobile |
| Citizens Utilities | Locus Communications | Pineland Telephone | Vonage Holdings |
| Clear World Communication | Logix Communications | PhoneTech | Wabash Telephone |
| Com-Cast Cable Comm. | Longlines Wireless | PhoneTel | Weblink Wireless |
| Comm South Companies | Los Angeles Cellular | Preferred Telephone | Western Wireless |
| Commercial Communications | Madison River Communications | Priority Communications | Westlink Communications |
| Consolidated Communications | | Puretalk | Windstream Communications |
| Conversent Communications | Madison/Macoupin Telephone Company | RCN Telecom | WinStar Communications |
| Cox Communications | | RNK Telecom | Wirefly |
| Cricket Wireless | Mankato Citizens Telephone | QWEST Communications | WISPNET, LLC |
| Custer Telephone Cooperative | Map Mobile Comm | Sage Telecom | World Comm |
| DBS Communications | Marathon Comm | SE All-Tel Comm | XO Communications |
| Delta Communications | Mark Twain Rural | Seren Innovations | Xspedius |
| Detroit Cellular | Matrix Telecom, Inc. | Sigecom LLC | Yakdin Valley Telephone |
| Dobson Cellular | Max-Tel Communications | Sky Tel Paging | YMAX Communications |
| Egyptian Telephone | McCleod USA | | Ztel Communications |
| Electric Lightwave, Inc. | | | |

**ATTACHMENT 1, TO INCLUDE PROVIDERS OF ANY TYPE OF WIRE AND/OR ELECTRONIC COMMUNICATIONS**          Last Update: 11/14/2017